Good morning, Your Honors, and may it please the Court. Holmes Hampton, Certified Law Student for Petitioner Edward Canales-Cardona, supervised by Jeffrey Kelman and Eleanor Ruth. As a brief roadmap, I will discuss the point of error under corroboration for approximately four minutes, and my co-counsel will discuss the withholding claim also for approximately four minutes. With this Court's permission, I would like to reserve two minutes for rebuttal. This Court's decision in Wren v. Holder is well-established precedent in the circuit. Wren interpreted the Real ID Act to require a certain procedural sequence when an immigration judge desires corroboration from an otherwise credible applicant. In that case, Wren requires that the I.J. provide the applicant with notice of the area of testimony in need of corroboration and an opportunity for the applicant to obtain that corroborative evidence. Here, the I.J. below followed none of the Wren requirements. Instead, the I.J. gave a general and boilerplate admonition during a master calendar hearing, and six months later, when the immigration judge finally heard testimony on the merits, the immigration judge ordered the testimony closed, denied Mr. Canales-Cardona's application, and it was only then did Mr. Canales-Cardona finally learn the corroboration that the I.J. found necessary. The government—this clearly does not comport with Wren, and the government does not seriously contend otherwise. Instead, the government relies on a formalistic and incomplete application of the exhaustion requirement. But as this Court well knows, exhaustion is satisfied where the BIA squarely addresses an issue on the merits. And here, the BIA did just so. On page 3 of the record, you'll see the BIA reiterated the I.J.'s conclusion on corroboration. It included a citation to Wren v. Holder, and the opinion addresses both prongs of the Wren requirements. On notice, the BIA concluded that the I.J.'s master calendar hearing admonition was sufficient for notice under Wren. In other opportunity, the BIA reasoned that because Mr. Canales-Cardona came to his merits hearing with a litany of documentary evidence, he should have also had the opportunity to obtain the corroborative evidence the I.J. found lacking. Accordingly, the BIA addressed the corroboration issue on its merits, and the issue is properly before this Court. Additionally, the due process error stemming from the Wren violation was necessarily prejudicial. Our briefing includes a citation to three cases, Lye, Vitari, and Ajunzi, which find, upon a finding of a Wren violation, automatic and inferred prejudice because of the inability for the applicant to create a full and complete record. Because the lack of a full and complete record necessarily could have changed the outcome of those proceedings, the Court found prejudice, as it should here. What relief are you seeking here? Your Honor, we request a limited and minimally intrusive remand that essentially would go back to the end of the merits hearing, grant Mr. Canales-Cardona a continuance, for the I.J. to provide him notice of the corroborative evidence that the I.J. found necessary and an opportunity to present it. But the I.J. also decided on an alternative grant. I guess your co-counsel is arguing that. So even if we agree with you on Wren, that doesn't mean that your client prevails, correct? Your Honor, I respectfully disagree. I think a finding of error under Wren necessarily infected the rest of the proceedings. For example, the I.J.'s analysis of the particular social group aspect of the withholding claim would have been different had the I.J. provided Mr. Canales-Cardona an opportunity to present the corroborative evidence in the form of an affidavit from the mother. That would have affected the I.J.'s determination of the particular social group. How so? Well, an affidavit that the I.J. found necessary was an affidavit from the mother that described the perpetrators in Mr. Canales-Cardona's sibling's murder, as well as the reason for that. If Mr. Canales-Cardona had been given an opportunity to present that affidavit, that would have affected the I.J.'s determination of the particular social group question. And Your Honor, I see my four minutes has elapsed, so if you have no other questions, I'd like to allow my co-counsel to speak. Thank you. May it please the Court, Certified Law Student Elena Carter for Mr. Canales-Cardona. I will be addressing our arguments on withholding. The DIA characterized Mr. Canales-Cardona's argument regarding family as new on appeal, but the record compels the conclusion that he properly raised family as a potential particular social group to the I.J. I looked at all of the cites in your brief, and they have the word family, or there was a cite to a first circuit case. There was no specific explanation that he was claiming family as a particular social group. So if they disagree with you on that point, do you lose? No, Your Honor, because the I.J.'s duty in this case was, and this is the I.J.'s own words here, was that he needs to look at the record and see if any particular social groups would conform to the facts. The I.J. doesn't really have that duty, but here the I.J. said he considered the particular social group of persons who will be harmed because drug traffickers want him to work for them, and then he held that that wasn't enough to state a particular social group. Why doesn't that resolve this issue? Well, Your Honor, first of all, this holding that the group defined by gang resistance was not cognizable as a matter of law. There is no such categorical rule. The BIA, for instance, pointed to a case involving an applicant from Honduras for the general proposition that individuals who resist gang recruitment are not, as a matter of law, socially distinct and therefore can't constitute a particular social group. But in Pribok v. Holder, this court held that you can't just point to another case concerning a different society. You have to actually make a case-by-case determination as to whether a proposed social group is recognized by the particular society. But I didn't see any argument that Guadalupe was meaningfully different than Honduras. Did I miss that? So, again, looking at that assessment involves looking at country conditions reports, expert witness testimony, press accounts, historical patterns. So, country conditions reports can be updated, can change. But then, was that case made to Mr. Canales-Cardona make that argument? Well, Mr. Canales-Cardona did include evidence in the record, pages 343 to 344, which is in the country conditions reports that should have been sufficient to apprise the IJ of the gang resistance group being cognizable in that particular society. And that evidence on the record speaks to resistors of gang recruitment being perceived as having betrayed the cartels, turning their back on the cartel, and therefore being singled out for unique methods of violence. However, I would like to jump back to the family-based group, because in addition to explicitly and procedurally raising the issue of family, for instance, and he did fight that First Circuit case, as you just mentioned, Gabriel Michael versus INS, holding that membership in a particular social group can be established based on the relationship with a family member. But he also explicitly raised the issue in many places throughout the record. And I see I'm now cutting into my rebuttal time, if I could just briefly finish my point, Your Honor. Of course. I just want to draw your attention to there are many places in the record, pages 39 to 40 in our briefing. And as a final example, I'd like to say that Mr. Canales-Cardona's brother, Olven, was threatened by Edgar Rivera on a soccer field, and Rivera told Olven, your brother deserves the worst. And Olven disappeared shortly thereafter. And that interaction suggests that the cartel was targeting Olven, at least in part due to his relationship with his brother, Les Lisey, because years prior, he had refused to work for the cartel. So that, I believe, undercuts the government's characterization of Mr. Canales-Cardona and his siblings as merely random, similarly situated individuals. And I'll reserve the last time for rebuttal. All right. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, Andrew Nzinga, on behalf of the Attorney General. In Puget Source's second application, he relied on essentially the same story, but changed the details, now claiming that he and his brothers had been, or siblings had been and would be harmed because they refused to join a criminal gang. Because of that change, and because that alleged motivation is not protected ground, the immigration judge properly denied on nexus and on corroboration. The petitioner doesn't really focus on those actual findings, and instead presents this court with a variety of largely procedural complaints that don't change the outcome in this case. First, nexus is dispositive of withholding of removal, and petitioner does not meaningfully address it. The immigration judge found that petitioner specifically testified that he believes he will be harmed because drug traffickers want him to work for him. And that's not protected ground. That's not the immigration judge guessing. That's exclusively what petitioner testified. When the immigration judge asked him very directly, okay, what is the motive? And the petitioner said, they're drug traffickers, and they want you to work for them. Not family, not all the other particular social groups. So petitioner is dropped by the wayside as he's perceived it has gone on. The immigration judge found the motivation wasn't exactly as petitioner testified it was. A desire for him to work for them, and a prior desire for his siblings to work for them. That's not protected ground, and petitioner could have somehow changed or modified that or actually made an argument to the board on that ground. And instead he presented three new particular social groups, two of which now have been again discarded, and now presenting a fifth. Mr. Nisenka, could I interrupt you for a second? Would you direct yourself to the argument made by Mr. Hampton that, number one, Mr. Canales-Cardona was found to be credible, correct? And that there was a request, there was a demand by the IJ that there be corroborative evidence, but the corroborative evidence demanded was not specific enough as to a family identification for a particular social group. Do you agree with Mr. Hampton on that? No. Why not? Well, as this court is well aware, living in soft income before it's saying, I was found credible. And that is simply not physically relevant on whether you meet the burden of proof. As the Supreme Court is recognizing, mean guy, immigration judges, fact finder, can rely on a variety of concepts. Either the immigration judge simply found the petitioner was being truthful, but truthful does not equal adequate. And when, again, what petitioner has repeatedly ignored is a specific testimony that the drug dealers wanted to harm him because he didn't want to work for him, not family. But I think the point is, did the immigration judge say the corroborative evidence ought to be pointed to the claim of a particular social group? Was he specific enough in asking for the corroborative evidence to meet the test? Well, that is where the difficulty of failure to exhaust the claims of the board creates a fundamental problem. Because now a petitioner is suggesting that the corroboration went to an un-exhausted particular social group. So how could the immigration judge demand corroboration for a particular social group that the petitioner never testified to? Essentially, petitioners have thrown up a variety of front hearings, largely because petitioners didn't raise any of these issues to the board. So the immigration judge didn't demand corroboration for family. She simply requested some sort of corroboration, which petitioners don't deny. Petitioners don't deny the commonsensical concept in this case, where the petitioner was in removal proceedings for five years, submitted essentially the exact same claim, absent explained motivation, goes to Guadalajara voluntarily for three months, comes back, and now says he knows why. It's a completely reasonable request to say, well, okay, well, how did this change? But, again, if the petitioner wanted to raise this complaint to the board and to the agency, then it should have been raised. Because, again, petitioners morphed by raising a variety of un-exhausted things. And now it's even worse because the un-exhausted corroboration complaints are made in an un-exhausted particular social group. Do you agree on this discussion? My apologies, go on. Do you disagree with their argument that the requirements of friend-beholder were not met in the IJ's request for corroboration? The board did not decide their specific complaints. The board generically recognized that petitioners may have been noticed. But because the petitioner filed a lengthy appeal brief and did not raise anything regarding corroboration, the board could not and was not given the opportunity, as it must be given, to pass on the merits of the claims regarding the mother's. I mean, claims that now a petitioner hasn't raised, such as the mother's illiteracy, that she couldn't provide a statement, despite the fact that she did provide a statement before. The cousins who are here provided a statement, besides that both he and the mother apparently live in the exact same village as these drug dealers have since, well, 2006. So, again, if a petitioner wanted to raise these claims, raise them to the board, and the board would have happily addressed them. But we can't now go second-guessing the immigration judge. Because note what petitioner has argued today. The immigration judge can be there. If the immigration judge can be there, ask the board to fix it. This discussion would be very different, and unlike what the petitioner is suggesting, exhaustion is not formalistic. It's a word lawyers use to dismiss legal requirements. Congress mandates it, as the Supreme Court emphasized just recently. They found it's not jurisdictional, but it's mandatory. This is not a formalistic trick to harm anyone. This is simply saying the agency must be given the opportunity to pass on issues. It must present it. Petitioner didn't. Formalistic, technical, or otherwise, is a legal mandate of Congress. This is Travis Freesia. How much notice did the IJ give to the petitioner to bring in the evidence?  But the difficulty is the implication of what that notice means was not passed on by the board. Now, petitioner passes over very quickly and argued today, saying, well, it's just a general notice. Remember context, Your Honor. This person attempted at a later hearing to apply the exact same asylum application that had already been denied just recently. The immigration judge said, you can't do that. I need a different application. You can't rely on the exact same application. And I need evidence on that. Then petitioner said, well, what he actually testified to was, I haven't spoken to my mother since I was in Guatemala. Well, again, the petitioner was just in Guatemala recently visiting her. Again, he waved to Pion's last asylum claim to go visit her. So, again, the desire is that the reason this needs to be raised to the board is not to present evidence. The desire is to raise it to the board is because here's all this complex, factual, nuanced context. And petitioner has ignored it before this court. In a sense, it's pending. Petitioner can ignore it before this court because if these issues were never raised to the board, unsurprisingly, petitioner can go and raise anything when nothing's been exalted. To just address briefly the concept of suggesting that red equals an automatic prejudice in this case, it fundamentally ignores what occurred in here. Petitioner is emphasizing corroboration for family, except that was not a particular social group presented to the immigration judge. And, again, it doesn't matter. What the immigration judge said is petitioner specifically testified, testimony that petitioner has repeatedly ignored, that the drug dealer targeted him because he didn't want to join them, not family. So, what would corroboration for family have to say on that? Well, even if the immigration judge requests it, it's irrelevant. There's no prejudice here, even if the court were to go beyond exhaustion and delimit the merits of the claim. Well, the petitioner has not addressed that protection at all, so we will leave that for the briefs and find that the court should deny, in part, and dismiss, in part, given petitioner's failure to raise essentially the vast majority of claims to the agency. Thank you very much. Thank you. You have a minute for rebuttal. Thank you, Your Honors. Just three quick points. First, exhaustion with respect to the corroboration issue. Government counsel is noticeably silent on the issue of the BIA addressing corroboration on its merits and the opinion. You'll see at page three of the record the BIA address both the notice and the opportunity prong of Wren. Where the BIA has addressed an issue on its merits, it's properly before this court, regardless of what the content of the applicant's or the petitioner's briefing. The policy behind exhaustion is that we want to give the BIA an opportunity to pass on an issue before it comes to this court, and that occurred below. Accordingly, exhaustion is not an issue, at least for the corroboration issue. The issue is properly before this court. Second, the government says that the IJ gave petitioner a notice that the IJ required some sort of corroboration. That is clearly deficient under Wren and illustrates the prejudice in this case. Had the IJ informed Mr. Canales-Cardona that, and I see my time is lost, may I briefly conclude? Just wrap up, please. Okay. Had the IJ provided Mr. Canales-Cardona notice that the IJ required corroboration for the PSG issue, Mr. Canales-Cardona could have presented evidence that affected the IJ's determination on the PSG issue. That is why prejudice with respect to corroboration overwhelms any issue with the IJ's determination on the withholding claim. Thank you, Your Honors. Thank you. The case of Canales-Cardona v. Garland is submitted. We thank both sides for their argument. We thank the Wallace School for taking this case on. Thank you.
judges: Siler, BEA, IKUTA